IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

AMANDA R.,

      **Plaintiff,**

v.                                    **Case No.: 5:23-cv-00781**

MARTIN J. O'MALLEY,
Commissioner of the
Social Security Administration,

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration *(*hereinafter "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. The matter is assigned to the Honorable Frank W. Volk, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs seeking judgment on the pleadings. (ECF Nos. 4, 5).

The undersigned fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF No. 4); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF

No. 5); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, with prejudice, and removed from the docket of the Court.

## I.    <u>Procedural History</u>

Amanda R. ("Claimant") filed for DIB and SSI, alleging a disability onset date of January 26, 2021 due to "bipolar with psychosis, ADD, ADHD, [narcolepsy], anxiety, [and] depression." (Tr. at 214-26, 258). After her applications were denied at the initial and reconsideration levels of review, Claimant requested an administrative hearing, which was held before the Honorable Timothy Wing, Administrative Law Judge (the "ALJ"), on March 9, 2023. (Tr. at 40-65). By written decision dated May 22, 2023, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 18-39). The ALJ's decision became the final decision of the Commissioner on October 3, 2023 when the Appeals Council denied Claimant's request for review. (Tr. 5-10).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 3). Claimant filed a Memorandum, requesting remand of the Commissioner's decision, and the Commissioner filed a Brief in Support of his decision to which Claimant filed a reply. (ECF Nos. 4, 5, 6). Thus, the matter is ripe for resolution.

## II.    <u>Claimant's Background</u>

Claimant was 43 years old on her alleged onset date and 45 years old on the date of the ALJ's decision. (Tr. at 32). She communicates in English, completed two years of college, and previously worked as a paralegal. (Tr. at 257, 259).

III.    <u>**Summary of ALJ's Decision**</u>

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id*. If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* §§ 404.1520(d), 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* §§ 404.1520(e), 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the

impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* §§ 404.1520a(b), 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* §§ 404.1520a(d), 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself

4

will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through June 30, 2026. (Tr. at 23, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since January 26, 2021, the alleged disability onset date. (Tr. at 24, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: bipolar disorder, generalized anxiety disorder, social anxiety disorder, attention deficit hyperactivity disorder ("ADHD"), and post-traumatic stress disorder ("PTSD"). (*Id.*, Finding No. 3). The ALJ also considered Claimant's

gastroesophageal reflux disease and sleep disorder, but he found that the impairments were non-severe. (Tr. at 24).

Under the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 24-27, Finding No. 4). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can perform simple, routine, repetitive tasks that are not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes. The claimant can have no more than frequent interaction with supervisors and coworkers and no more than occasional interaction with members of the public.

(Tr. at 27-32, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could not perform her past relevant work. (Tr. at 32, Finding No. 6). Therefore, the ALJ reviewed Claimant's prior work experience, age, and education in combination with her RFC to determine her ability to engage in other substantial gainful activity. (Tr. at 32-33, Findings 7 through 10). The ALJ considered that (1) Claimant was defined as a younger individual age 18 to 49 on the alleged disability onset date; (2) Claimant had at least a high school education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of her transferable job skills. (Tr. at 32, Findings 7 through 9). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including unskilled, medium exertional work as a hand

packager, laundry worker, or industrial cleaner. (Tr. at 32-33, Finding No. 10). Thus, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 33, Finding No. 11).

## IV.    **Claimant's Challenges to the Commissioner's Decision**

Claimant contends that the RFC finding is not supported by substantial evidence, the medical source opinions were not properly considered, and the rejection of Claimant's subjective allegations is unsupported by substantial evidence. (ECF No. 4). In response, the Commissioner argues that substantial evidence supports the ALJ's RFC assessment, including his consideration of the medical opinions and prior administrative findings. (ECF No. 5). The Commissioner further asserts that the ALJ reasonably evaluated Claimant's subjective complaints. (*Id.*).

## V.    **Relevant Evidence**

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A.  *Treatment Records*

Psychiatrist Robert Murdock, M.D., treated Claimant since March 14, 2011, for bipolar disorder, generalized anxiety disorder, attention deficit hyperactivity disorder, social anxiety disorder, hypersomnolence, and features of post-traumatic stress disorder. (Tr. at 429). He prescribed an anti-psychotic medication, aripiprazole, as well as other drugs such as lamotrigine; a sedative, lorazepam; Adderall; and modafinil.

In May 2021, Claimant reported significant social anxiety with avoidance of driving and shopping, and she was noted to be "still somewhat nervous and dysphoric, with tears welling up a few times" and "[r]ational if still somewhat ruminative." (Tr. at 352). Although Claimant appeared "brighter" and more relaxed the following month,

she "[continued] to live her hermit-like lifestyle, staying at home and relying on her boyfriend to drive her or shop for her." (Tr. at 351). In August 2021, Claimant was less anxious with rational thoughts. (Tr. at 381). After breaking up with her boyfriend, Claimant had to resume driving herself and interacting in public again, although she minimized such interactions. (*Id*.). Claimant relied on her "mentor," an older woman who she had known for years, to provide emotional support and assistance with managing her money to prevent manic spending. (*Id*.). Claimant worked on dog-breeding activities, but it was a part-time occupation that did not net her any income. (*Id*.).

By August 2021, although Claimant was "less dysphoric" and "less ruminative," Dr. Murdock opined that Claimant was unable to sustain full time work due to her inability to tolerate stress, sustain concentration, maintain work effort, or interact effectively with others. (Tr. at 374). In November 2021, Claimant was working one hour every few weeks as a bookkeeper at a museum, but she continued to avoid social interactions. (Tr. at 380). She was later tearful describing an incident in which her mentor insisted that she got out socially. (Tr. at 389).

In April 2022, Claimant told Dr. Murdock that she had to resign from her bookkeeper job because it was too stressful. (Tr. at 388). She was pleasant and displayed rational thoughts, but she was a little ruminative. (*Id*.). In June 2022, Dr. Murdock noted that Claimant had organized thought and was spending her days attending to her dogs and assisting her mentor in running her farm. (Tr. at 386). Yet, Dr. Murdock stated that Claimant was only working a few hours a day, as that was all she is capable of doing. (*Id*.). Dr. Murdock documented that Claimant was much more comfortable around farm animals and her dogs than people. (*Id*.).

While Dr. Murdock recorded positive findings in September 2022, such as improvement in Claimant's focus and rational and organized thoughts, Claimant still experienced mood fluctuations, especially if she was forced to interact with others when she would rather remain secluded. (Tr. at 403). In December 2022, Claimant told Dr. Murdock she was doing "pretty good" and found her relationship with her neighbor to be particularly helpful. Once again, she displayed a pleasant demeanor along with rational and organized thoughts. (Tr. at 404). Dr. Murdock maintained that Claimant remained disabled. (*Id*.).

### B. Evaluations, Prior Administrative Findings, and Opinions

On July 19, 2021, psychologist Judith Lucas, M.A., examined Claimant at the Commissioner's request and issued a report with a diagnosis of Bipolar I Disorder with Psychotic Features and Generalized Anxiety Disorder, resulting in moderate deficiencies of social functioning and mild deficiencies in pace with a poor prognosis. (Tr. at 360-63). During the examination, Claimant alleged problems with her memory and suggested that she did not get along with others. (Tr. at 361). Ms. Lucas observed that Claimant was cooperative but sometimes rambled, although her speech was coherent for the most part. (Tr. at 361-62). Although Claimant was fully oriented, she presented with a depressed and anxious mood. (Tr. at 363). She reported delusions, and Ms. Lucas found that Claimant's insight, judgment, and memory were limited. (*Id*.).

On July 27, 2021, state agency psychologist Jeff Boggess, Ph.D., performed a psychiatric review technique based upon his review of Claimant's records, including her consultative examination report. Dr. Boggess assessed that Claimant had a moderate limitation in the broad functional category of interacting with others and mild limitations in the other paragraph B categories. (Tr. at 71, 77). At the reconsideration

level of review, on June 9, 2022, Jeff Harlow, Ph.D., assessed that Claimant had moderate limitations in all four broad functional categories. (Tr. at 84, 92). Dr. Harlow completed a mental RFC assessment, concluding that Claimant was limited to performing "repetitive one and three-step work like activities" as a result of her moderate functional limitations. (Tr. at 86-88, 94-96).

In addition to an August 25, 2021, statement that Claimant was "no longer able to function at any full-time job on a consistent basis as she is unable to tolerate stress, sustain her concentration, maintain her work effort, or interact effectively with others," (Tr. at 374), on September 24, 2021, Dr. Murdock completed a form to provide his medical opinion of Claimant's functional limitations. (Tr. at 429-34). In summary, Dr. Murdock explained that Claimant had a "[p]artial response to medical management and individual psychotherapy but with substantial residual symptoms," and she continued to exhibit "[i]ntense mood swings, marked social anxiety, pronounced mistrust of others, inability to tolerate stress, maintain concentration or sustain work effort." (Tr. at 429). Dr. Murdock opined that no further improvement was likely and Claimant would be unable to meet competitive standards or was seriously limited in multiple areas of work-related activities and, apart from a moderate limitation in understanding information, she had marked limitation in all areas of mental functioning. (Tr. at 429, 431-33).

### C. Claimant's Testimony

On March 9, 2023, Claimant testified during her administrative hearing that she spent her days staring at the television on mute, not even "know[ing] what comes on." (Tr. at 50-51). She expressed that she has a power of attorney ("POA") who has to check on her every day and help her manage her money, make sure that she eats, and confirm

10

that no one is abusing her. (Tr. at 54-55). Claimant testified that her "brain bounces […] always trying to connect dots that don't go together," and she hears voices and has panic attacks. (Tr. at 54-55). She cannot "handle people," as it triggers her panic attacks. (Tr. at 56). Her POA has to stay on the phone with her, sometimes all day, to keep her grounded, and sometimes has to come to her house. (Tr. at 57). Claimant testified that unknown people stalked and tortured her; hacked her computer; and pulled a trailer next to her neighbor's house to torment her. (Tr. at 57-58). She told "the last attorney [that she] worked for," who "called the feds," and the trailer was moved. (Tr. at 58).

## VI.    <u>Standard of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial

evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

**VII.   Discussion**

Claimant argues that the "ALJ's assertion that the RFC contained greater limitations than the opinions with 'limited persuasive value' is unsupported, resulting in harmful error." (ECF No. 4 at 7). SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR §§ 404.1545(b)-(d), 416.945(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed;

(2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As to the evidence that the ALJ must consider in assessing Claimant's RFC, the ALJ is not required to defer or give any specific evidentiary weight, including controlling weight, to any medical opinions or prior administrative medical findings. 20 C.F.R. §§ 404.1520c(a); 416.920c(a). However, the ALJ is required to evaluate the persuasiveness of the medical opinions and prior administrative findings based upon the regulatory factors, including supportability; consistency; relationship of the source to the claimant;

length, purpose, and extent of treatment relationship; frequency of examinations; whether the source examined the claimant; the source's specialization; and other factors. *Id.* at §§ 404.1520c(c), 416.920c(c). The ALJ must articulate his or her consideration of the factors of supportability and consistency, but the ALJ is not required to explain how he or she considered the other regulatory factors. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

The term "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). Furthermore, the law explains that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s)" are. *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, the ALJ considered Dr. Harlow's prior administrative finding that Claimant was limited to work involving one to three step work activities based on her moderate limitations in all areas of mental functioning. (Tr. at 30). The ALJ found that Dr. Harlow's finding was of "limited persuasive value" because the record supported "additional limitations." (Tr. at 30-31). The ALJ noted that Claimant consistently engaged in mental health treatment, was prescribed medication for mental health conditions, and her provider documented issues with her thought processes, concentration, and self-management. (Tr. at 30). In addition, Claimant reported, as well as demonstrated during the consultative examination, memory and concentration

14

deficits. (*Id.*). She further alleged difficulty with appropriate interaction, insight, judgment, anxiousness in social interactions, and lack of emotional control. (Tr. at 30-31).

Yet, despite only explaining why Claimant had greater deficits than Dr. Harlow found, the ALJ actually assessed less restrictive mental restrictions regarding the steps that she could perform. It is unclear from the decision whether the ALJ intended to omit the restriction to one to three step work like activities, and, if so, why the ALJ did not determine that it was warranted. The ALJ was certainly not obligated to adopt Dr. Harlow's prior administrative finding. However, the decision is incapable of meaningful review because the ALJ's RFC analysis does not reconcile with his RFC finding.

The ALJ assessed that Claimant could "perform simple, routine, repetitive tasks that are not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few workplace changes." (Tr. at 27). In addition, Claimant could have "no more than frequent interaction with supervisors and coworkers and no more than occasional interaction with members of the public." (*Id.*). Critically, none of those restrictions correspond to a restriction to one to three step work like activities. The adjectives "simple, routine, [and] repetitive," for example, concern the complexity of tasks that Claimant can perform. By contrast, a restriction to "one to three step work like activities," relates to the number of steps. Three step work activities are akin to a limitation to "short" instructions. *Dellinger v. Berryhill*, No. 317CV00676RJCDSC, 2019 WL 1325929, at *3 (W.D.N.C. Mar. 25, 2019); *Bellew v. Kijakazi*, No. 4:20-CV-02265-TER, 2021 WL 4621903, at *6 (D.S.C. Oct. 7, 2021); *Mahnken v. Comm'r of Soc. Sec.*, No. 3:21-CV-00349-FDW, 2022 WL 4591804, at *3 (W.D.N.C. Sept. 29, 2022). Driving directions provide a useful analogy to demonstrate

the critical distinction. Driving directions "may prescribe many turns, but the turns are generally easy to make, and the route rarely changes, making the directions simple, routine, and repetitive." *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019). However, simple driving directions may require many steps.

In this case, Dr. Harlow determined that Claimant could not perform work like activities that exceeded three steps. Therefore, even if each step was straightforward, Claimant would be precluded from performing jobs which involved more than three steps. Therefore, the ALJ's RFC finding was less restrictive than Dr. Harlow's, although the ALJ professed to include "additional limitations." The ALJ could have explained why he did not include the one to three step restriction. *See, e.g., Bradley v. Comm'r of Soc. Sec.*, No. 1:20-CV-00113-RJC, 2022 WL 392323, at *3 (W.D.N.C. Feb. 8, 2022) ("Here, the ALJ explained that she gave great weight to the Agency psychologists' general opinion that Bradley could perform simple, routine tasks, which she included in the RFC. The ALJ did not include limitations for short/one-to-three step instructions and nonproduction centered pace and explained this was because the record as a whole, including Bradley's statements, showed that no additional limitations related to mental demands like concentration, persistence, or pace were needed. The ALJ thus built a 'logical bridge from the evidence to [her] conclusion' and her RFC decision is supported by substantial evidence.").

However, the ALJ provided no such explanation in this case. He was obligated to address critical conflicting evidence and provide adequate support for his RFC decision, but he failed to do so. Claimant's mental RFC was indeed the cornerstone of the decision, as the ALJ assessed no physical RFC restrictions, and the case rested entirely on Claimant's mental functional ability to work. The disjointed analysis concerning one to

three step work like activities cannot be considered harmless error in this case because such a limitation could be outcome determinative. The ALJ found that Claimant was not disabled because she could work as a hand packager, laundry worker, or industrial cleaner. (Tr. at 33). The DOT defines all of those occupations as requiring a reasoning level two, which requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." Hand Packager, DOT 920.587-018, 1991 WL 687916; Laundry Worker II, DOT 361.685-018, 1991 WL 672987; Industrial Cleaner, DOT 381.687-018, 1991 WL 673258. Courts have found that there is an apparent conflict between jobs that require reasoning level two and a restriction to one to three step work activities. *Bellew*, 2021 WL 4621903, at *6. Therefore, it was imperative that the ALJ properly analyze this evidence.

For those reasons, the undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon his analysis of Claimant's mental RFC. The undersigned notes that Claimant also argues that the ALJ did not properly consider the medical source opinions or evaluate her subjective symptoms. However, those challenges are intrinsically intertwined in the mental RFC assessment, which is unsupported for the reasons stated. Therefore, Claimant's additional challenges will be addressed on remand. *See generally Messer v. Kijakazi*, No. 1:21-CV-00011-FDW, 2022 WL 1912775, at *3 (W.D.N.C. June 3, 2022) ("The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand [...] In declining to address the other assignments of error in dicta here, the Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the

prior decision in the new decision issued upon remand.") (citations omitted); *Melton v. Colvin*, No. 3:14-CV-00447-RLV, 2016 WL 1532457, at *7–8 (W.D.N.C. Apr. 15, 2016) ("Because the Court has determined that *Mascio* warrants remand due to the ALJ's failure to properly explain his RFC determination and the hypothetical to the vocational expert, on which he relied, in light of his findings regarding Claimant's severe mental impairment and related limitations, the Court will not address the Claimant's remaining summary judgment arguments. To do otherwise would have this Court provide an impermissible advisory opinion on such issues. Further, because a new RFC determination may be necessary or because the ALJ may further explain his original RFC determinations on remand, it would be a waste of judicial resources for the Court to issue a lengthy opinion on such matters when they may be mooted by further proceedings.").

**VIII.  Recommendations for Disposition**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 4), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 5); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United

States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:**     **October 22, 2024**

Joseph K. Reeder
United States Magistrate Judge